UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-14031-CR-MARTINEZ/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH PIQUET and
ALPHATRONX, INC.,

    Defendants.
_____/

FILED by _____ D.C.

NOV - 7 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON DEFENDANTS JOSEPH PIQUET AND ALPHATRONX, INC.'S MOTION TO QUASH AND SUPPRESS [D.E. #50]

**THIS CAUSE** having come on to be heard upon the aforementioned motion and this Court having reviewed the motion, the government's response, and this Court having conducted a hearing on November 5, 2008, at which time this Court received evidence and arguments of counsel, this Court recommends to the District Court as follows:

    1.    The Defendants seek suppression of all evidence seized in this matter and argue that the Search Warrant issued by this Court lacked probable cause and specific attribution as the source or sources of information contained in the warrant. The undersigned United States Magistrate Judge issued the Search Warrant in this case on March 1, 2005. The Defendants argue that the "blanket sourcing" allegations by the affiant is insufficient because the allegations do not set out what the affiant personally observed, what was told to him by other agents, and what documents were reviewed. Further, the Defendants' motion argues that the quality of information contained within the affidavit was flawed as its origins are unknown and that the facts alleged in the affidavit do not give rise

to probable cause and that the Defendants were not exporting electronic components to Hong Kong.

2.     The affidavit submitted in support of the Application For Search Warrant lists information personally observed by the affiant, information obtained through conversations with governmental agents involved in this investigation and review of certain documents. The Defendants' motion argues that the nexus between the corporate defendant and Hong Kong is not attributed to any source and that transactions between the corporate defendant and Northrop Grumman are well documented. However, any documentation between the corporate defendant Alphatronx and Ames PC is not well documented.

3.     As this Court will later relate to the District Court herein specifically, there were three shipments of electronic parts which the government alleges are U. S. military technology. The Defendant Alphatronx is owned by the Defendant Piquet with offices in Port St. Lucie, Florida. The Defendant Alphatronx, on its website, lists itself as a franchise distributor of military and non-military components.

4.     The Defendants' motion alleges that in regards to the first shipment, which this Court will detail later herein, there is no connection between the Defendant Alphatronx receiving goods from Northrop Grumman and the corporation Ames PC's shipment of similar electronics to a third party in Hong Kong. In regard to the second shipment, the motion alleges that there is insufficient allegations as to what the Defendant Alphatronx shipped to Ames, if anything. The Defendants argue that it is purely speculation that the same components received by Alphatronx from Northrop Grumman were shipped to Ames PC with the ultimate destination being Hong Kong. The motion goes on to argue that the facts set forth in the affidavit are insufficient to give rise to a reasonable belief or probable

cause that the corporate defendant Alphatronx and its owner Piquet would have any records concerning illegal shipments of electronic parts by Ames PC to parties in Hong Kong. This Court will go into detail summarizing various portions of the affidavit relating to the issues which are suggested by the Defendants to be insufficient to establish probable cause. Rather than recite them here and then again later, this Court will simply recite them when addressing the facts alleged in the affidavit.

5.  Finally, the Defendants argue that the <u>Leon</u> good faith exception is inapplicable in this situation in that the application for search warrant is devoid of any information that the corporate defendant Alphatronx engaged in any illegal activity. The Defendants argue that possession and interstate shipment of such military or non-military technology is not illegal. Finally, the Defendants argue that attempts to "impart" Ames PC activities to the corporate defendant Alphatronx is inappropriate.

6.  The Defendants presented no evidence or testimony at the hearing. The reason for this is that the Defendants conceded that they did not have any evidence to permit a <u>Franks</u> inquiry. There are no allegations in the motion that the affiant intentionally misstated facts or misled this Court in his affidavit, nor are there any allegations of any intentional omissions which would have ultimately negated probable cause. That being said, there was no entitlement to an evidentiary hearing and the Defendants relied upon the facts set forth in their motion.

7.  In response to the motion, the government argued that there is a well-connected set of circumstances set forth in the affidavit to give this Court just reason to believe that there was probable cause that violation of United States criminal statutes was afoot and that evidence of such violations may be found in the records of the Defendants

Alphatronx and Piquet at their corporate offices in St. Lucie County, Florida.

8.  The government did present as a witness at this hearing, the affiant for establishment of the <u>Leon</u> exception, should the Court need to get to that point. The affiant, Agent Blekicki, stated that there was nothing false in the affidavit and that he did not omit anything in the affidavit. He further testified that he executed the Search Warrant and there was nothing on the face of the Search Warrant which would have indicated to him that the Search Warrant was invalid or lacking in probable cause. Aside from that, there was no other evidence received by the Court. This Court permitted counsel for the Defendants as the moving party and counsel for the government to make any other arguments they wished which may not already be contained within the motion and the response filed herein. Both counsel for the Defendants and counsel for the government indicated that there was nothing additional and that they would rely upon the papers already submitted.

## AFFIDAVIT

9.  This Court will attempt to paraphrase certain portions of the affidavit submitted in support of the Application For Search Warrant. The Court will specifically address those portions of the affidavit which the Defendants' motion alleges are deficient.

10. First, the affidavit states that the allegations contained therein are based upon personal observation, review of investigations with other agents concerning this matter, and review of investigative documents. The affidavit also specifically establishes that the affidavit is being submitted in respect to violations of federal law regulating export of defense articles without the required licensure and approval of the United States State Department. Further, the affidavit establishes that Alphatronx is the corporate defendant

and is owned by the Defendant Joseph Piquet. The affidavit alleges that Alphatronx, according to its own website, is a distributor of military and non-military components.

11. The affidavit identifies Joel Ames of Dallas, Texas, as the operator of a business known as Joel Ames PC, which will be referred to herein as Ames PC by this Court. The affidavit alleges that the corporate defendant Alphatronx has supplied electronic components to Ames PC. Finally, in identifying parties herein, the affidavit identifies SpecTronics as a Texas company listed by the corporate defendant Alphatronx as an end user of certain electronic component shipments received from Northrop Grumman as detailed later in the affidavit.

12. The affidavit alleges that on July 13, 2004, the corporate defendant Alphatronx ordered certain electronic components from Northrop Grumman. These components are described in detail in the affidavit. The day after that order, Alphatronx faxed Northrop Grumman (NG) an end user certificate listing E-Systems of Dallas, Texas, as the ultimate consignee of that shipment. This end user certificate was certified by an individual named Ben Davis of SpecTronics. The affidavit sets forth that such an end user certificate is required for licensing requirements to comply with United States law.

13. The affidavit alleges that on August 4, 2004, corporate defendant Alphatronx sent NG a wire transfer confirmation and payment for the above referenced order of electronic components. The items were then shipped by NG to the corporate defendant Alphatronx on August 6, 2004.

14. Thereafter, the affidavit established that on August 12, 2004, Ames PC completed a Fedex form to ship very similar, if not identical, electronic parts to Ontime Electech Co in Hong Kong. The affidavit alleges that Ames PC did not obtain the

necessary export licensure from the Department of State.

15. The affidavit sets forth a second order from the corporate defendant Alphatronx to NG on or about September 14, 2004, for additional electronic parts. The corporate defendant Alphatronx provided an end user certificate on October 6, 2004, listing E-Systems of Dallas, Texas, as the ultimate consignee. As in the previous order, Ben Davis of SpecTronics was the certifying official for the end user certificate.

16. The affidavit alleges that during October 2004, while the September 14, 2004 order was pending with NG, an individual called NG and identified himself as Joel Ames. Further, he identified himself as an employee of the corporate defendant Alphatronx and was inquiring as to the status of when the September 14, 2004 electronic parts order would be shipped.

17. The affidavit sets forth that on October 26, 2004, the corporate defendant Alphatronx provided NG with a wire transfer to pay for the September 14, 2004 order of electronics. The order was then shipped to the corporate defendant Alphatronx on October 27, 2004.

18. The affidavit alleges that shortly thereafter on October 28, 2004, the corporate defendant Alphatronx sent a shipment via Fedex to Ames PC. Two days later on October 30, 2004, Ames PC completed forms to once again ship the very same or similar electronic parts which had been ordered by the corporate defendant Alphatronx from NG, to Ontime Electech Co in Hong Kong. This is the same company that Ames PC had previously made a similar shipment to. Once again, the affidavit alleges that there was no valid export license obtained by corporate defendant Alphatronx or Ames PC for such shipment to Hong Kong.

19.     A third order was made on or about January 11, 2005 by the corporate defendant Alphatronx to NG for more electronic parts. Corporate defendant Alphatronx provided NG with an end user certificate with no end user listed. Ben Davis of SpecTronics was once again the person who signed the end user certificate. NG notified the United States Department of Commerce of this particular order on or about January 26, 2005. An investigation was initiated of the corporate defendant Alphatronx in respect to exporting restricted electronic items without the necessary license.

20.     The affidavit alleges that on February 3, 2005, investigators with the United States Department of Commerce (DOC) contacted the Raytheon corporation because it was believed that E-Systems, one of the end user consignees listed on the corporate defendant Alphatronx' certificates, was a part of Raytheon. Representatives of Raytheon informed DOC investigators that at one time E-Systems was a subsidiary, but it had been closed for ten years.

21.     The affidavit establishes that on February 9, 2005, DOC investigators requested Fedex to intercept any shipments to or from Ames PC. Shortly thereafter on February 11, 2005, the corporate defendant Alphatronx sent NG another end user certificate for the January 11, 2005 order. The certificate listed SpecTronics as the ultimate consignee and the end user certificate was signed by the Defendant Piquet as the certifying official.

22.     The affidavit alleges that on February 18, 2005, NG informed DOC investigators that it had been paid for the January 11, 2005 order. DOC investigators determined that the required licenses had not been issued to the corporate defendant Alphatronx nor Ames PC nor SpecTronics as would have been required for any of these

items to have been sent to any non-governmental entity anywhere in the world.

23. On February 23, 2005, officials with Fedex informed DOC investigators that a shipment from NG to the corporate defendant Alphatronx was being delivered that same day. NG and the United States State Department (DOS) confirmed that the electronics sold by NG to the corporate defendant Alphatronx required export licensing because these items are used for radar systems and missile target acquisition applications. Additionally, the affidavit alleges that NG informed the investigators on February 24, 2005 that it has never sold any such items to Ames PC.

24. The affidavit submitted in support of the Application For Search Warrant alleges that there is a pattern of orders from the corporate defendant Alphatronx to NG and subsequent shipments of restricted electronic parts from NG to the corporate defendant Alphatronx. The affidavit alleges that the pattern of activity then continues with shipments of the same electronics from the corporate defendant Alphatronx to Ames PC and then exports by Ames PC of these same items to Ontime Electech Co in Hong Kong, in violation of federal law. The affidavit alleges that the affiant believes that the offices of the corporate defendant Alphatronx would contain evidence of violation of these criminal statutes as listed in the affidavit. As specific reasons, the affiant sets forth more detail to summarize his investigative findings and those reasons are summarized by this Court from the affidavit as follows:

   a. The corporate defendant Alphatronx is a franchise distributor of military and non-military components as listed on its corporate website.

   b. The corporate defendant Alphatronx should have known that DOS and DOC licenses must be obtained and that such electronic items not be exported in violation

8

of United States laws.

      c.    End user certificates for the orders of the corporate defendant listed to go to E-Systems as the ultimate consignee were questionable since that company was purportedly closed for ten years.

      d.    The three orders by the corporate defendant Alphatronx from NG were followed closely in time by shipments from the corporate defendant to Ames PC and shortly thereafter shipments by Ames PC to a third party in Hong Kong without the necessary licenses as required by United States law.

      e.    Ames called NG representing himself to be an employee of the corporate defendant Alphatronx checking on a specific electronics order which matched electronic parts later purportedly exported by Ames PC to Hong Kong, in violation of United States laws. The affiant alleges that it is unusual for a "customer" of a corporate defendant to make such a call to a wholesale distributor such as NG. If Ames was actually a customer of the corporate defendant Alphatronx, it would be unusual for that customer to be contacting the corporation from whom Alphatronx had ordered such electronic parts.

      f.    The affidavit establishes that Hong Kong is known in the investigative community as a diversion point for exporters to make illegal exports to other countries.

      g.    That the corporate defendant Alphatronx is required to keep records of such sales, exports/re-exports of United States military and technology items for five years.

The affidavit then goes on to specifically list numerous descriptions of various records which would reasonably be believed to be contained and housed within the corporate offices of Alphatronx concerning these transactions.

## ANALYSIS

24.     As stated previously, in order to justify entitlement to an evidentiary hearing, the Defendants must establish that there were intentional omissions or misstatements made by the affiant which were essential to the establishment of probable cause. United States v. Holt, 246 Fed.Appx. 602 (11th Cir. 2007). There was no such showing by the Defendants' motion and counsel for the Defendants conceded this fact at the evidentiary hearing when it was addressed by this Court at the outset of the hearing. As a result, this Court must look to the four corners of the affidavit to determine whether or not sufficient probable cause has been established in regards to the deficiencies specifically outlined by the Defendants in their motion.

25.     First, the Defendants argue that the affidavit is deficient in the sources of information that it cites. This Court would disagree. The affidavit alleges that the affiant has obtained information by personal observation, review of the investigation with other agents, and review of investigative documents. Such observations of fellow officers engaged in common investigation are plainly a reliable source. There is no case law which requires an officer or agent to verify independently facts related to him by other police officers before the facts could be included within an affidavit in support of an application for search warrant. United States v. Campbell, 193 Fed.Appx. 921 (11th Cir. 2006). Further, this Court specifically finds that the affiant does not have to address and separate each fact within the affidavit and attribute it to personal observation, information from fellow law enforcement officers/agents and/or review of investigative documents.

10

26.     The validity of a search warrant affidavit requires : (1) demonstration of a connection between the defendants and the location to be searched; (2) demonstration of a link between the location to be searched and criminal activity; and (3) demonstration of the affiant's veracity and basis of knowledge. United States v. Davis, 313 F.3d 1300 (11th Cir. 2002). In this instance, before this Court gets to the probable cause determination, the government has established these three necessary elements. The affidavit demonstrates a connection between the corporate defendant Alphatronx and its owner Piquet to the premises to be searched, which are the corporate offices in question. The second requirement is satisfied as well since the affidavit does attempt to establish a link between the corporate offices of the corporate defendant Alphatronx and criminal activity involving the exporting of regulated electronic and military technology in violation of United States laws set forth in the Application. Whether or not those facts established probable cause sufficiently will be discussed separately. Finally, the third element is satisfied in that the agent has sufficiently established that the allegations in his affidavit are based on personal knowledge, information from other agents or his personal review of documentation. There is nothing to indicate that the affiant obtained any information from confidential sources so the reliability of such sources is not an issue.

27.     The Court must look to the totality of the circumstances to determine whether probable cause existed to support issuance of the search warrant in question. United States v. Brundidge, 170 F.3d 1350 (11th Cir. 1999). Probable cause exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. Probable cause as stated by the court in Brundidge is a fluid concept turning on the assessment of probabilities in a particular

factual context. Additionally, the court in <u>Brundidge</u> specifically stated that "great deference" is given to a lower court's determination of probable cause. There is no allegation of perjury or reckless disregard or omission of information by the affiant in this instance. Therefore, this Court does not need to address the issue of excluding certain items from the affidavit in determining whether or not the remaining information/facts would constitute probable cause. Since there has been no evidence nor allegation by the Defendants to support any such finding of intentional misstatements or omissions, the Court is left with all of the allegations contained within the four corners of the Application For Search Warrant and attached affidavit.

28.     This Court specifically finds that the affidavit sets forth in sufficient detail a pattern of activity in which certain regulated and restricted military technology was being ordered by the corporate defendant Alphatronx and Piquet as its owner, from Northrop Grumman. Once again, the affidavit establishes that the very same or very similar electronics were then shortly thereafter shipped by the corporate defendant Alphatronx and Piquet to Ames PC. Further, the affidavit establishes that the very same or very similar electronics which are restricted and requiring certain licensure by federal agencies, were then shipped by Ames PC to Hong Kong in violation of United States laws. Further, the affidavit establishes none of the necessary licenses had been obtained by the corporate defendant Alphatronx, the Defendant Piquet, SpecTronics, Ames PC or any other individuals.

29.     The affidavit seeks detailed records which the affiant believed may be contained within the corporate offices of Alphatronx in St. Lucie County. The detail and specificity of the types of records being sought is quite lengthy as the affidavit itself reflects.

However, even if the affidavit sought "all business files", that would be sufficient and would not be found to violate the Defendants' Fourth Amendment rights concerning particularity. United States v. Martinelli, 454 F.3d 1300 (11th Cir. 2006). Therefore, even though the Defendants do not raise this as an issue, this Court finds that the specificity and types of documents sought by the Search Warrant were listed with sufficient particularity to pass judicial muster and are not found to violate the Defendants' Fourth Amendment rights in that regard.

30. This Court attempted to go through and paraphrase for the District Court the pertinent portions of the affidavit submitted in support of the Application For Search Warrant. The particular excerpts taken from the affidavit as paraphrased by this Court herein above were in an attempt to give the District Court a picture of what this Court believes to be a pattern of activity which would establish "a fair probability" of finding evidence of the violation of United States criminal statutes as listed in the affidavit. Once again, as the Brundidge court stated, this Court must look at the totality of the circumstances in determining whether or not there is a fair probability of finding such evidence and thereby establishing probable cause to justify issuance of a search warrant. The particular facts of each case are determinative of that issue.

31. Alternatively, should the District Court find that the Search Warrant was lacking in probable cause, this Court must address the Leon exception. The Leon good faith exception applies to preclude suppression of evidence seized even if a search warrant affidavit's allegations are insufficient to determine probable cause to justify a search. The Leon exception would allow suppression of evidence and granting of a motion only if the agents involved were dishonest/reckless in preparation of their affidavit or could not have

harbored objectively reasonable belief in the existence of probable cause. <u>United States v. Robinson</u>, 336 F.3d 1293 (11th Cir. 2003). In <u>Robinson</u>, the Eleventh Circuit Court of Appeals stated specifically that the <u>Leon</u> good faith exception to the exclusionary rule does not apply where:

    (a)    The issuing Magistrate was misled by information in the search warrant affidavit and application which the affiant knew was false or would have known was false except for his reckless disregard of the truth;

    (b)    The issuing Magistrate wholly abandoned his judicial role;

    (c)    The affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

    (d)    Depending upon the facts in this case, the search warrant was so facially deficient in that it failed to particularize the place to be searched or things to be searched, that the executing agents could not have reasonably presumed the search warrant to be valid.

32.    None of these circumstances are present in the case before this Court. There is no allegation that the undersigned United States Magistrate Judge was misled by any information either included or omitted from the affidavit. Secondly, this Court does not believe that it abandoned its judicial role in review of the Application, Affidavit filed in

support thereof, and issuance of the Search Warrant. Thirdly, this Court does not find that the affidavit submitted was so lacking in probable cause to render an obvious belief on the part of the agent that the Search Warrant was invalid. Finally, this Court finds that the facts in this case do not justify a finding that the Search Warrant was so facially deficient on its face such that it could not be believed by the executing agents. The place to be searched, the alleged facts justifying the search, and the specifically described items to be searched are all properly set forth in the Application and Affidavit. See also United States v. McClure, 160 Fed.Appx. 842 (11th Cir. 2005).

33. Based upon the foregoing, this Court finds that the Defendants have not sustained their burden in establishing entitlement to suppression of the evidence in this case nor that the Search Warrant be quashed.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendants' motion [D.E. #50] be **DENIED**.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this _7th_ day of November, 2008, at Fort Pierce, Northern Division of the Southern District of Florida.

_____
FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Jose E. Martinez
AUSA Theodore M. Cooperstein
Charles Wender, Esq.